Christopher J. Keller (CK-2347)
Michael W. Stocker (MS-1309)
Rachel A. Avan (RA-5177)
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
mstocker@labaton.com
ravan@labaton.com

*Attorneys for Norfolk County Retirement System
and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL SEAN DUNCAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SCOTT GINSBURG, NEIL NGUYEN, and DG FASTCHANNEL, INC., <br><br> Defendants. | Civ. A. No. 1:10-cv-06523-RJS <br><br> Hon. Richard J. Sullivan <br><br> ECF Case |
| PETER TOURS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> DG FASTCHANNEL, INC., SCOTT GINSBURG, OMAR A. CHOUCAIR, and NEIL NGUYEN, <br><br> Defendants. | Civ. A. No. 1:10-cv-06930-RJS <br><br> Hon. Richard J. Sullivan <br><br> ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF NORFOLK COUNTY RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF  SELECTION OF LEAD COUNSEL**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 3

ARGUMENT ........................................................................................................................... 5

I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................... 5

II. NORFOLK COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF ........................ 6

    A.  The PSLRA Standard for Appointing Lead Plaintiff ............................................... 6

    B.  Norfolk County is the "Most Adequate Plaintiff" .................................................... 7

    1.  Norfolk County Has Satisfied the PSLRA's Procedural Requirements ................. 8

    2.  Norfolk County Has the Largest Financial Interest in the Outcome of the Action ........................................................................................................................ 8

    3.  Norfolk County Satisfies Rule 23's Typicality and Adequacy Requirements ........................................................................................................... 9

        (a)  Norfolk County's Claims Are Typical of Those of the Class ..................... 9

        (b)  Norfolk County Will Fairly and Adequately Protect the Interests of the Class ........................................................................................................ 10

    4.  NORFOLK COUNTY IS PRECISELY THE TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA ................................... 11

III. THE COURT SHOULD APPROVE NORFOLK COUNTY'S CHOICE OF LEAD COUNSEL ............................................................................................................. 12

CONCLUSION ...................................................................................................................... 13

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...............................................................................5, 6

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..............................................................................................11, 12

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ..............................................................................................9

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
   236 F.R.D 184, 188-89 (S.D.N.Y. 2006) .................................................................................9

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*,
   --- F.R.D. ---, 10 Civ. 2835, 2010 WL 2816797 (S.D.N.Y. July 15, 2010) .........................7, 9

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ...............................................................................................5, 6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................................9

*In re Waste Mgmt., Inc. Sec. Litig.*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................................12

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................................5, 10

### **DOCKETED CASES**

*In re Am. Int'l Group, Inc. Sec. Litig.*,
   04-cv-8141 (S.D.N.Y.) ............................................................................................................12

*In re Countrywide Fin. Corp. Sec. Litig.*,
   07-cv-5295 (C.D. Cal.) ...........................................................................................................12

*In re Monster Worldwide, Inc. Sec. Litig.*,
   No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007) ........................................12

## FEDERAL STATUTES

Fed. R. Civ. P. 23(a) ...........................................................................................................9, 10

15 U.S.C. § 78u-(4)(a) *et seq.* ................................................................................................ *passim*

## MISCELLANEOUS

H.R. Rep. No. 104-369 at 34 (1995),
    *reprinted in* 1995 U.S.C.A.A.N. 730, 733 ..................................................................................3

S. Rep. No. 104-98 (1995),
    *reprinted in* 1995 U.S.C.A.A.N. 679, 685 ..................................................................................3

Norfolk County Retirement System ("Norfolk County") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an order: (1) consolidating the above-captioned, related actions (the "Action"); (2) appointing Norfolk County as Lead Plaintiff for a Class of purchasers and acquirers of common stock in DG FastChannel, Inc. ("DG FastChannel" or the "Company") from February 16, 2010 through August 29, 2010, inclusive (the "Class Period");[1] (3) approving Norfolk County's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Pending before the Court are two related securities class actions[2] brought against: DG FastChannel, a provider of digital delivery services for the advertising industry; Scott Ginsburg, the Company's founder, Chairman of the Board, and Chief Executive Officer ("CEO"); Omar Choucair, the Company's Chief Financial Officer; and Neil Nguyen, the Company's President and Chief Operating Officer (collectively, "Defendants"). The Action alleges violations of

---

[1] The complaints against DG FastChannel (attached as Exhibit A to the accompanying Declaration of Rachel A. Avan ("Avan Decl.")) assert different class periods. After it is appointed, the Lead Plaintiff will reconcile the different class periods upon filing a consolidated complaint.

[2] A third securities class action, styled *Duncan v. Ginsburg*, 10-cv-1769 (N.D. Tex. Sept. 8, 2010), was filed in the Northern District of Texas on September 8, 2010. This suit was voluntarily dismissed on October 12, 2010.

Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5") promulgated thereunder, and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").

During the Class Period, DG FastChannel is alleged to have issued materially false and misleading statements regarding the Company's growth and profitability forecasts.  The Action alleges that throughout the Class Period, the Company led analysts and investors to believe that its growth would build, and that statements to this effect were incorporated by reference in the Company's secondary offering of 3,175,000 shares of common stock on or about April 8, 2010.  Less than a month after asserting that its second quarter 2010 results were in line with analysts' consensus estimates, DG FastChannel disclosed that results for third quarter 2010 and full year 2010 would not meet analysts' expectations.  DG FastChannel's stock dropped in response, causing the Class to incur millions of dollars in losses.

Pursuant to the Exchange Act, as amended by the PSLRA, and for the reasons set forth below, Norfolk County respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers of DG FastChannel common stock during the Class Period who incurred damages as a result of the Defendants' alleged violations of the federal securities laws.  As set forth in detail below, Norfolk County lost $98,915, as calculated under the last-in-first-out ("LIFO") loss calculation methodology, on its investment in DG FastChannel common stock during the Class Period.  A copy of the PSLRA-required Certification submitted by Norfolk County is attached as Exhibit B to the Avan Declaration.  This Certification sets forth all of Norfolk County's transactions in DG FastChannel common stock during the Class Period.  In addition, a chart reflecting the calculation of Norfolk County's financial losses on DG FastChannel common stock purchased during the Class Period is attached as Exhibit C to the Avan Declaration.  In

light of the significant transactions and losses reflected in these exhibits, Norfolk County has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant. Norfolk County also meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of the absent Class, and it will fairly and adequately represent the interests of the Class.

Furthermore, because it is a sophisticated institutional investor that suffered losses on the same securities as the other Class members, Norfolk County is well-suited to pursue litigation that is in the best interests of the Class. Indeed, the PSLRA's legislative history shows that large, sophisticated institutional investors like Norfolk County are precisely the type of investor whose participation in securities class actions the PSLRA was meant to foster. *See* H.R. Rep. No. 104-369 at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. In short, Norfolk County is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Finally, pursuant to the PSLRA, Norfolk County requests the Court to appoint its choice of Labaton Sucharow as Lead Counsel. Labaton Sucharow is eminently qualified and has extensive experience in the prosecution of securities fraud claims such as the ones asserted in the Action.

## FACTUAL BACKGROUND

Complaints were filed against DG FastChannel in this Court on September 2, 2010 and September 14, 2010 asserting claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, and Sections 11 and 15 of the Securities Act. Specifically, the Complaints allege that during the Class Period, DG FastChannel failed to disclose that:

(1) analysts' positive estimates were incorrect due to declines in the Company's standard definition business; and (2) its Pathfire subsidiary's conversion from a wholesale to retail business model was damaging DG FastChannel's bottom line.

DG FastChannel, a pioneer in the digital distribution of advertisements, currently controls a majority of the market for digital advertisement distribution.[3]  This market dominance is due in part to the Company's inception-to-distribution service model, which has helped the advertising industry cut costs.  The Company has emphasized that its business is seasonal, building throughout the year (*i.e.*, revenues are lowest in the first quarter and highest in the fourth quarter).  The Company's revenues are also positively impacted by political advertising in election years such as 2010.  Recently, the distribution market in which DG FastChannel operates has grown increasingly competitive.

During the Class Period, the Company asserted that its performance was in line with analyst expectations.  For example, on May 5, 2010, DG FastChannel announced first-quarter 2010 results and CEO Ginsburg stated: "we believe that we will be at the high end of the consensus numbers that have been published."  CEO Ginsburg explained that 2010 was a better year than 2009 for advertising because there was generally more interest in advertising, it was a mid-term election year, and the adoption curve for high-definition advertising was increasing.  Similarly, on August 4, 2010, when announcing second-quarter 2010 results, CEO Ginsburg reiterated these positive industry factors and stated that the Defendants continued to believe that the Company could meet consensus projections.

---

[3] DG FastChannel is a Delaware corporation with headquarters in Irving, Texas.  Its shares trade on the NASDAQ Global Market exchange in this District under the ticker symbol "DGIT."

Notwithstanding these assertions, on August 30, 2010, the Company performed an about-face. In its first-ever guidance, the Company disclosed that it would miss analyst expectations (the "August 30th Announcement"). It attributed the lackluster prospects for the third-quarter of 2010 and full-year 2010 to "normal seasonality" and the retooling of its Pathfire subsidiary. Following this news, DG FastChannel's stock dropped $9.43, or more than 38 percent, to close at $15.11.

When asked on September 16, 2010 about how the Company could attend the Oppenheimer conference on August 10, 2010 and give its "normal bullish and appropriately so business talk and then 2.5 weeks later talk about transition that didn't seem to have been discussed a whole lot," CEO Ginsburg acknowledged that with the August 30th Announcement, the Company had sought to "straighten . . . out" analyst estimates, which "had gotten way ahead of the Company."

The Company's conduct and the revelations thereof have caused DG FastChannel's stockholders to lose millions of dollars.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA requires the Court to consider a motion to consolidate prior to deciding a motion for appointment of lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") is proper when actions involve common questions of law and fact. *See Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (Batts, J.); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999). The Court has broad discretion under this Rule to consolidate cases pending within the District. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Courts recognize

that class action shareholder suits are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *See id.* at 1285; *Aronson*, 79 F. Supp. 2d at 1150.

Two related securities class actions have been filed in this Court against the Defendants. These actions present substantially similar factual and legal issues, arise from the same alleged scheme by Defendants, and allege violations of federal securities laws. Each action alleges claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, names the same defendants, and stems from the same underlying facts and circumstances. Because these actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all others and similar class certification issues will be relevant to all the related actions. Accordingly, consolidation of the actions is appropriate under Rule 42(a) and the PSLRA, and Norfolk County respectfully submits that these actions should be consolidated.

## II. NORFOLK COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I)  of the pendency of the action, the claims asserted therein, and the purported class period; and

>   (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff. Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, --- F.R.D. ---, No. 10 Civ. 2835(NRB), 2010 WL 2816797, at *1 (S.D.N.Y. July 15, 2010).

### B. Norfolk County is the "Most Adequate Plaintiff"

Norfolk County respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1. Norfolk County Has Satisfied the PSLRA's Procedural Requirements

Norfolk County filed this Motion to serve as lead plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notice regarding the pending nature of this Action was published on *PR Log*, a widely-circulated, national, business-oriented news reporting service, on September 13, 2010.[4] *See* Avan Decl. Ex. D. Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before November 12, 2010. Norfolk County has filed its motion within the required period.

### 2. Norfolk County Has the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, Norfolk County suffered substantial losses of approximately $98,915 calculated under the LIFO methods of accounting for purchases and sales, purchased 5,651 net shares of DG FastChannel, and spent more than $190,251 acquiring the Company's common stock. *See* Loss Analysis, Avan Decl. Ex. C. Importantly, Norfolk did not sell any of its shares during the Class Period. As such, its losses are not impacted by the removal of "in-and-out" losses associated with pre-disclosure stock sales. Norfolk County is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because it also satisfies Rule 23's typicality and adequacy requirements, Norfolk County is entitled to the legal presumption that it is the most adequate plaintiff.

---

[4] *PR Log* press releases are distributed through Google® News.

### 3. Norfolk County Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Hartford*, 2010 WL 2816797, at *5; *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same).

#### (a) Norfolk County's Claims Are Typical of Those of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists "where the claims of the Lead Plaintiff arise [from] the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188-89 (S.D.N.Y. 2006). Notably, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality. *See Constance Sczensy Trust*, 223 F.R.D. at 325.

The typicality requirement is plainly satisfied here because Norfolk County, which is not subject to any unique or special defenses, seeks the same relief and advances the same legal

theories as other Class members.  Like all members of the Class, Norfolk County: (1) purchased or acquired DG FastChannel common stock during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; and (3) suffered damages as a result. *See Glauser*, 236 F.R.D. at 189 (discussing the typicality requirement).  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

### (b)     Norfolk County Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous [advocacy]."  *Weltz*, 199 F.R.D. at 133 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

Norfolk County will fairly and adequately represent the interests of the proposed Class. No antagonism exists between Norfolk County's interests and those of the absent Class members; rather, the interests Norfolk County and Class members are squarely aligned.  In addition, Norfolk County has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).  Norfolk County suffered substantial losses due to Defendants' alleged fraud and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, Norfolk County satisfies the adequacy requirement.

### 4. NORFOLK COUNTY IS PRECISELY THE TYPE OF LEAD PLAINTIFF ENVISIONED BY THE PSLRA

In addition to satisfying the requirements of Rule 23, Norfolk County, as a large, sophisticated institutional investor, is the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions.  Congress noted in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Rep. No. 104-369 at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733).

Established in 1937, Norfolk County provides retirement benefits to 9,500 active and retired government employees of forty governmental units and is one of the largest public retirement systems in the Commonwealth of Massachusetts.  Norfolk County has more than $450 million in assets.

Norfolk County is a sophisticated institutional investor with sufficient resources to adequately litigate the Action and supervise Class counsel.  Norfolk County understands the fiduciary duties of a lead plaintiff, is willing to oversee the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." *See* Certification, Avan Decl. Ex. B.  Moreover, because Norfolk County has served as a lead plaintiff in other securities actions, *see id.*, its experience will benefit the Class.  Thus, as demonstrated herein, Norfolk County is the very personification of the lead plaintiff contemplated by the PSLRA.

### III. THE COURT SHOULD APPROVE NORFOLK COUNTY'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. Norfolk County has selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the Class.

Labaton Sucharow has excelled as lead counsel in numerous important actions on behalf of defrauded investors. Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements in principle totaling approximately $1 billion. Labaton Sucharow is also lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624 million, the largest subprime-related securities class action settlement achieved to date. Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at the time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"); *see also* Labaton Sucharow Firm Resume, Avan Decl. Ex. E. Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against HealthSouth, Bear Stearns, Fannie Mae, Satyam, and others. In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."

## **CONCLUSION**

For the foregoing reasons, Norfolk County respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint Norfolk County Retirement System as Lead Plaintiff; (3) approve its selection of Labaton Sucharow LLP as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated:  November 12, 2010

Respectfully submitted,

**LABATON SUCHAROW LLP**

By:  */s/ Christopher J. Keller*

Christopher J. Keller (CK-2347)
Michael W. Stocker (MS-1309)
Rachel A. Avan (RA-5177)
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
mstocker@labaton.com
ravan@labaton.com

*Attorneys for Norfolk County Retirement System
and Proposed Lead Counsel for the Class*

- 13 -